UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVID FEUSI,<br><br>                    Plaintiff,<br><br>v.<br><br>CENTURION OF IDAHO, LLC; DR. KATE WILKS; CHAD PAGE; JOSH TEWALT; RANDY VALLEY; MARY STONER; and ASHLEY DOWELL,<br><br>                    Defendants. | Case No. 1:24-cv-00172-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff David Feusi's Complaint as a result of Plaintiff's status as an inmate. The Court now reviews the Complaint to determine whether it or any of the claims contained therein should be summarily dismissed under 28 U.S.C. § 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order.

## 1.    Pleading Standards and Screening Requirement

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under modern pleading standards, Rule 8 requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal*/*Twombly* "facial plausibility" standard is met when a complaint contains "factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (internal quotation marks omitted).

If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted). Bare allegations that amount to a mere restatement of the elements of a cause of action, without adequate factual support, are not enough.

The Prison Litigation Reform Act ("PLRA") requires that the Court review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915A. The Court must dismiss any claims that do not have adequate factual support or are frivolous or malicious. *Id*.

The Court also must dismiss claims that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. *Id*. These last two categories—together with claims that fall outside a federal court's narrow grant of jurisdiction—encompass those claims that might, or might not, have factual support but nevertheless are barred by a well-established legal rule.

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for

INITIAL REVIEW ORDER BY SCREENING JUDGE - 2

the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (stating that Rule 12(b)(6) authority to dismiss claims was expanded by the PLRA, giving courts power to dismiss deficient claims, sua sponte, before or after opportunity to amend). Moreover, even if a complaint meets the pleading requirements, dismissal under §§ 1915 and 1915A is still appropriate if an affirmative defense, is an "obvious bar to securing relief on the face of the complaint." *Washington v. Los Angeles Cty. Sheriff's Dep't*, 833 F.3d 1048, 1056 (9th Cir. 2016) (internal quotation marks omitted).

## 2.     Factual Allegations

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"), currently incarcerated at the Idaho State Correctional Center. Plaintiff alleges that, in March 2022, he reported a left shoulder injury and asked for medical treatment. *Compl.*, Dkts. 1 & 1-2, at 4.[1] One month later, Plaintiff received an x-ray. At a follow-up appointment, Dr. Isaacs recommended an MRI. The MRI was initially denied. *Id*. at 4–5.

Plaintiff filed a grievance on the issue, and the MRI was then approved. However, Plaintiff did not receive the MRI until nine months after the initial injury. *Id*. at 5. The MRI

---

[1] In this Order, page citations to the Complaint refer to Plaintiff's page numbers, not the electronic page numbers as generated by CM/ECF.

showed that Plaintiff had "a full-thickness tear to the left supra-spinatus and micro-tears to bicep tendon." *Id*.

Plaintiff then began to have severe pain in his other shoulder. X-rays to the right shoulder showed "a slightly visible lump of tissue … most likely the remnants of the tendon and detached muscle that tore away from the bone." *Id*. Dr. Isaacs recommended another MRI, which—again—took nine months to be completed. This MRI showed a "complete tear" to Plaintiff's right shoulder that was "inoperable at this point." A surgeon told Plaintiff that "too much time had elapsed to do a simple tendon reattachment." Instead, "a complete shoulder joint reconstruction would be the only option now." *Id*. The surgeon has stated that he will not perform this operation until Plaintiff is released from prison, as the rehabilitation required is complicated.

After another six months, Plaintiff saw the surgeon again. The doctor confirmed that Plaintiff's right shoulder had continued to worsen, while the left shoulder had "only micro-tears … that can be rehabilitated with time." *Id*. at 6.

Plaintiff consistently requested pain medication for his shoulder injuries. However, Dr. Wilks discontinued Plaintiff's tramadol prescription and instead prescribed ibuprofen and Tylenol. *Id*. Plaintiff believes that if he were "out in the community," instead of incarcerated, he "would be receiving a strong opioid for the pain." *Id*. at 7.

Plaintiff also asserts that Centurion of Idaho, LLC—the private company providing medical treatment to Idaho inmates under contract with the IDOC—has used unlicensed medical personnel to treat inmates, as well as LPNs that have operated outside of their scope of practice. *Id*. Finally, Plaintiff claims that various IDOC officials have not ensured

that Centurion and its providers have treated Plaintiff adequately.

Plaintiff asserts federal civil rights claims and claims under Idaho state law. He names the following Defendants: (1) Centurion; (2) Centurion medical provider Dr. Wilks; (3) IDOC officials Chad Page, Josh Tewalt, Randy Valley, and Mary Stoner; and (4) Ashley Dowell, the Executive Director of the Idaho Commission of Pardons and Parole. *Id*. at 8–15. Plaintiff seeks declaratory, monetary, and injunctive relief, including (apparently) release on parole. *See id*. at 13 (alleging "abuse of discretionary power" by Director Dowell, evidently based on a failure to grant Plaintiff parole based on overcrowding and inadequate medical treatment).

3.    **Discussion**

    *A.    Section 1983 Claims*

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Prison officials and prison medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted). A plaintiff may also seek injunctive relief from officials who have direct responsibility in the area in which the plaintiff seeks relief. *See Rounds v. Or. State Bd. of Higher Educ*., 166 F.3d 1032, 1036 (9th Cir. 1999).

To bring a § 1983 claim against a private entity performing a government function, such as Centurion, a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). *See also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities performing a government function). Under *Monell*, the requisite elements of a § 1983 claim against such an entity are the following: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom

amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). An entity also "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority" or when "such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

Plaintiff brings his civil rights claims under the Eighth Amendment, which protects prisoners against cruel and unusual punishment and guarantees prisoners the right to minimally adequate conditions of confinement. To state a claim under the Eighth

Amendment, prisoners must plausibly allege that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

The Eighth Amendment includes the right to adequate medical treatment in prison. Prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain ....

INITIAL REVIEW ORDER BY SCREENING JUDGE - 8

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official or prison medical provider acts with deliberate indifference "only if the [prison official or provider] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal quotation marks omitted), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05 (footnotes omitted). Medical malpractice or negligence does not support a cause of action under the Eighth Amendment, *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam), and a delay in medical treatment does not violate the Eighth Amendment unless that delay causes further harm,

*McGuckin*, 974 F.2d at 1060. Additionally, there is no constitutional right to an outside medical provider of one's own choice. *See Roberts v. Spalding,* 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution.").

"If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. Moreover, even prison officials or medical providers who *did* know of a substantial risk to an inmate's health will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

"There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (internal quotation marks omitted). Accordingly, mere differences in judgment as to appropriate medical diagnosis and treatment between an inmate and prison medical providers—or, for that matter, between medical providers—are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

"[T]o prevail on a claim involving choices between alternative courses of treatment,

a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Stated another way, a plaintiff must prove that medical providers chose one treatment over the plaintiff's preferred treatment "even though they knew [the plaintiff's preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015). To violate the Eighth Amendment, the choice of treatment must have been "so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998); *see also Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018) ("[P]rison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants.").

Accordingly, prison medical providers do not act with deliberate indifference solely by disagreeing with an outside doctor's treatment recommendation or by choosing a different treatment than that requested by an inmate. However, if the prison provider's chosen treatment proves ineffective, a continued refusal to try other treatments can constitute deliberate indifference.

In *Snow*, for example, the Ninth Circuit held that a genuine factual issue existed as to whether providers violated the Eighth Amendment by denying double hip replacement surgery to an inmate whose hips had degenerated so badly that he could not walk and who

was in constant, severe pain. 681 F.3d at 988. Evidence suggested that providers had "ignored outside expert advice, relying solely on their own medical judgment for three years before eventually approving surgery." *Id*. This was sufficient to raise an inference of deliberate indifference even though a "medication-only course of treatment may have been medically acceptable for a certain period of time." *Id*. At some point, ignoring a "long term" recommendation of an outside provider may become "medically unacceptable." *Id*.

A court's review of a prison medical provider's choice of treatment must be especially deferential where the issue is the type or amount of pain medication an inmate should receive. In such cases, the court "is asked to pass judgment on the attempts by prison medical staff to navigate between" the risk of "debilitating pain" and the competing risk of addiction. *Baker v. Stevenson*, 605 F. App'x 514, 519 (6th Cir. 2015) (unpublished). Where a prison medical provider believes in good faith that a certain course of pain treatment might "create or enable" a risk of addiction, the provider's decision not to provide that treatment "cannot be considered an act of deliberate indifference." *Id*. The Constitution "does not impose a constitutional obligation upon prison officials" or prison medical providers "to enable a prisoner's substance abuse or addiction problem." *Id*. at 518.

Non-medical prison personnel generally are entitled to rely on the opinions of medical professionals with respect to the medical treatment of an inmate. However, if "a reasonable person would likely determine [the medical treatment] to be inferior," the fact that an official is not medically trained will not shield that official from liability for deliberate indifference. *Snow*, 681 F.3d at 986 (internal quotation marks omitted); *see also McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (stating that non-medical personnel

INITIAL REVIEW ORDER BY SCREENING JUDGE - 12

may rely on medical opinions of health care professionals unless "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner") (internal quotation marks omitted).

Plaintiff's Complaint, liberally construed, appears to state colorable Eighth Amendment claims of inadequate medical treatment against Centurion and Dr. Wilks. The amount of time that passed between Plaintiff's medical interventions, as well as Plaintiff's continued insistence that the pain medication provided was inadequate, gives rise to a plausible inference that Dr. Wilks acted with deliberate indifference to a serious medical need and that Centurion has a policy amounting to such deliberate indifference.

The Complaint also states plausible Eighth Amendment claims against the IDOC officials whom Plaintiff informed about the allegedly inadequate medical treatment, as well as those officials who are responsible for the provision of adequate medical treatment.

However, Plaintiff has not stated a plausible § 1983 claim against Defendant Dowell. This claim appears to seek release on parole, thus implicating the Due Process Clause of the Fourteenth Amendment. That clause prohibits state action that deprives a person of life, liberty, or property without due process of law, but a person cannot obtain relief on a due process claim unless he demonstrates that he was deprived of one of these protected interests. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989).

As to release on parole, the United States Supreme Court has held that there is "no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011). Therefore, an inmate may challenge a

decision to deny parole only when there is a *state-created* liberty interest in parole. *Id.* If a state statute governing parole "contains mandatory language and imposes substantive limitations on the discretion of those making the parole decision," then an inmate has a state-created liberty interest in parole and may bring a procedural due process challenge to a parole decision. *Moor v. Palmer*, 603 F.3d 658, 661 (9th Cir. 2010).

Federal courts look to decisions of the highest state court to determine whether there is a state-created liberty interest in parole. *Sass v. Calif. Bd. of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006) ("a State's highest court is the final judicial arbiter of the meaning of state statutes"), *overruled on other grounds by Hayward v. Marshall*, 603 F.3d. 546 (9th Cir. 2010) (en banc), *which was in turn abrogated on other grounds by Swarthout*, 131 S. Ct. 859. In *Banks v. State of Idaho*, 920 P.2d 905 (Idaho 1996), the Idaho Supreme Court held that there is no state-created liberty interest in the State of Idaho.

*Banks* acknowledged the existence of Idaho Code § 20-223, which governs parole commission decisions and contains the phrase "a parole shall be ordered … when …." Id. at 888. However, the court did not find the statute's "shall" language controlling in the liberty interest analysis. Rather, the state supreme court relied on Idaho Code § 19-2513— which governs sentencing—noting that it does not contain mandatory language, but instead provides that "[t]he offender *may* be considered for parole or discharged at any time during the indeterminate part of the sentence." *Id*. at 889.

The *Swarthout* and *Banks* decisions preclude this Court from concluding that Plaintiff had a federal or state-created liberty interest in being released on parole. Thus, Plaintiff's due process claim is implausible.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 14

Finally, release from custody is not an available remedy for the Eighth Amendment violations alleged in the Complaint. *See Heck v. Humphrey*, 512 U.S. 477, 481 (1994) ("[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983."). Thus, to the extent Plaintiff's parole claim is intended to rely on the Eighth Amendment, it is implausible.

### B.    *State Law Claims*

Plaintiff also asserts a state law claim that Centurion employs unlicensed medical personnel to treat inmates and that they have a policy of permitting licensed medical providers to exceed the scope of their license. The Court will exercise supplemental jurisdiction over Plaintiff's state law claim. *See* 28 U.S.C. § 1367.

Assuming that Plaintiff has complied with the Idaho Tort Claims Act, *see* Idaho Code §§ 6-901 through 6-929, Plaintiff may proceed on this state law claim against Centurion.

### 4.    Conclusion

Plaintiff may proceed as outlined above. This Order does not guarantee that Plaintiff's claims will be successful. Rather, it merely finds that some are plausible, meaning that they will not be summarily dismissed at this time but will proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims.

Defendants may still file a motion for dismissal or motion for summary judgment if

the facts and law support such a motion.[2] Because (1) prisoner filings must be afforded a liberal construction, (2) governmental officials often possess the evidence prisoners need to support their claims, and (3) many defenses are supported by governmental records, an early motion for summary judgment—rather than a motion to dismiss—is often a more appropriate vehicle for asserting procedural defenses such as non-exhaustion or entitlement to qualified immunity.

## ORDER

**IT IS ORDERED:**

1.    Plaintiff may proceed, as set forth above, on his Eighth Amendment and state law claims against Defendants Centurion, Wilks, Page, Tewalt, Valley, and Stoner. All other claims against all other Defendants are DISMISSED, and Defendant Dowell is TERMINATED as a party to this action. If Plaintiff later discovers facts sufficient to support a claim that has been dismissed, Plaintiff may move to amend the complaint to assert such claims.[3]

---

[2] The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Complaint under § 1915A. Therefore, motions to dismiss for failure to state a claim are disfavored in cases subject to § 1915A and may be filed only in extraordinary circumstances.

[3] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

2.      This Order serves as formal notice that Plaintiff must complete one of the

two following actions, as to each Defendant, within 90 days:

    a.      <u>Formal Service of Process</u>:

        i.      To obtain a summons from the Clerk of Court, Plaintiff must

file a "Request for Issuance of Summonses," which must

provide the names and service addresses of each Defendant to

the Clerk of Court. Thereafter, the Clerk of Court will prepare

and issue the summonses and provide them to Plaintiff.

        ii.     Plaintiff must serve a summons and a copy of the complaint

upon each Defendant by formal service of process, *see* Federal

Rule of Civil Procedure 4(c). Each type of Defendant must be

served in the specific manner specified in the subsection of

Rule 4 that applies to the particular defendant; for example, the

rules for serving individuals are different for the rules for

serving entities. *See* Fed. R. Civ. P. 4(e) through (j). Simply

mailing the complaint to the defendants or their lawyers is not

sufficient service of process.

        iii.    If Plaintiff chooses to use formal service of process, it must be

accomplished pursuant to Rule 4(c), including by a person

qualified according to Rule 4(c)(2).

        iv.     Immediately after service, the person serving the summons and

complaint must file a "Return of Service" with the Clerk of

Court to show the date, time, manner of service, and person upon whom the documents were served. If this document is not filed during or immediately after the 90-day service deadline, the complaint will be dismissed without prejudice.

b. <u>Waiver of Service of Summons</u>:

   i. Alternatively, Plaintiff can obtain "Waiver of Service of Summons" forms by requesting them from the Clerk of Court.

   ii. Plaintiff can prepare and send to each Defendant (not their attorney) a completed waiver form and a copy of the complaint, following Rule 4(d). Plaintiff must enter the date the waiver is being sent to the Defendant on each form before sending the waiver. The Defendant then has 30 days from the date entered on the form to sign and file the waiver if they choose to waive service. Defendants are not required to waive service.

   iii. Plaintiff must send out the waivers of service exactly as specified in Rule 4(d).

   iv. If a defendant chooses to waive service, then the defendant will file the waiver of service of summons with the Clerk of Court, and the defendant is obligated to file an answer or permissible pre-answer motion, or the defendant may be subject to entry of default.

      v.      If a defendant does not agree to waive service and does not file the waiver of service within the deadline, then the Plaintiff must use formal service of process (see above) to serve each Defendant according to Rule 4. If Plaintiff needs an extension of time to accomplish formal service of process after defendants fail to return waivers of service, then Plaintiff must file a "Motion for Extension of Time for Service under Rule 4(m)."

3.      If Plaintiff does not accomplish formal service of process or ensure that a signed waiver of service of summons for each defendant has been filed by the defendant within 90 days after issuance of this Order, all claims against any unserved Defendants will be subject to dismissal without prejudice, with or without additional notice to Plaintiff. *See* Fed. R. Civ. P. 4(m).

4.      After Defendants appear, the Court will issue an order governing the pretrial schedule in this case, including disclosure and discovery. *See* General Order 343, *In Re: Adoption of a Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases* (Feb. 8, 2019).

5.      Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner

of service, date of service, address of service, and name of person upon whom service was made.

6.    The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

7.    All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

8.    No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

9.    Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 20

10.  Pursuant to General Order 324, this action is hereby returned to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: May 21, 2024

David C. Nye
Chief U.S. District Court Judge

INITIAL REVIEW ORDER BY SCREENING JUDGE - 21